**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
ARSHAD COOPER,

                                          Plaintiff,

              -against-                                    Civil Action No.:

BRAVO MEDIA PRODUCTIONS INC. and
RYAN KELLEY,

                                          Defendants.
------------------------------------------------------------------------X

## COMPLAINT

The Plaintiff, ARSHAD COOPER (hereinafter "Plaintiff"), as and for his Complaint against the Defendants, BRAVO MEDIA PRODUCTIONS INC. and RYAN KELLEY (hereinafter collectively "Defendants"), respectfully alleges as follows:

### PRELIMINARY STATEMENT

1.      Plaintiff brings this action under the Fair Labor Standards Act (hereinafter the "FLSA"), 29 U.S.C. §§ 201 *et seq.*, Articles 6 and 19 of the New York Labor Law (hereinafter the "NYLL"), and the supporting New York State Department of Labor Regulations of the Official Compilation of Codes, Rules, and Regulations of the State of New York promulgated by the Commissioner of Labor pursuant to the Minimum Wage Act including Parts 142 and 146 of Title 12 (hereinafter "Regulations"), to recover unpaid minimum wages, unpaid overtime compensation, unpaid regular wages, damages for retaliation, and for other relief.

### JURISDICTION AND VENUE

2.      Jurisdiction over Plaintiff's FLSA claims is based upon Section 216(b) of the FLSA, 29 U.S.C. § 216(b), and upon 28 U.S.C. § 1331.

1

3.      The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a) because these claims are so related to the FLSA claims that they form part of the same case or controversy.

4.      Venue is appropriate in the Southern District of New York pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this district, where Defendants operate their business and where Plaintiff was employed by Defendants.

## PARTIES

5.      Plaintiff is an adult individual who is a resident of Queens, New York.

6.      Plaintiff was employed by Defendants as a non-managerial employee from in or about late April 2022 through in or about mid-April 2024, performing various roles including Stage Manager, Production Assistant, Grip & Gaffer, Teleprompter Operator, Painter, and Projection Installer.

7.      Plaintiff is a covered employee within the meaning of the FLSA and the NYLL.

8.      Defendant BRAVO MEDIA PRODUCTIONS INC. (hereinafter "Bravo Media") is a domestic business corporation duly organized and existing under and by virtue of the laws of the State of New York.

9.      Defendant Bravo Media maintains its principal place of business at 145 W 28th St, 2nd Floor, New York, NY 10001.

10.     At all relevant times, Defendant Bravo Media maintained control, oversight, and direction over Plaintiff, including but not limited to hiring, firing, scheduling, controlling work assignments, providing company equipment, and controlling other employment practices applied to Plaintiff.

11.    Defendant RYAN KELLEY (hereinafter "Kelley") is an individual who, upon information and belief, is a resident of the State of New York and is and was at all relevant times Vice President and partial owner of Defendant Bravo Media.

12.    At all relevant times, Defendant Kelley exercised operational control over Defendant Bravo Media, controlled significant business functions of Defendant Bravo Media, determined employee salaries, made hiring and firing decisions, and acted on behalf of and in the interest of Defendant Bravo Media in devising, directing, implementing, and supervising the wage and hour practices and policies relating to their employees, including Plaintiff.

13.    At all relevant times, Defendant Kelley participated in running the daily operations of Defendant Bravo Media.

14.    At all relevant times, Defendant Kelley participated in the management and supervision of Plaintiff and his work for Defendant Bravo Media.

15.    At all relevant times, Defendant Kelley maintained control, oversight, and direction over Plaintiff, including timekeeping, payroll, and other employment practices applied to him.

16.    At all relevant times, Defendants had substantial control over Plaintiff's working conditions and over the unlawful policies and practices applied to him.

17.    Defendants are covered employers within the meaning of the FLSA and the NYLL.

## FACTS

18.    From April 2022 through April 2024, Plaintiff was employed by Defendants at Bravo Media, performing various roles including Stage Manager, Production Assistant, Grip & Gaffer, Teleprompter Operator, Painter, Projection Installer, and In-house Photographer.

19.    Initially, Plaintiff was employed part time but beginning in or around June 2022, Plaintiff began working for Defendants full time each week.

20.     Throughout his employment, Plaintiff performed primarily manual labor duties including managing stage equipment, cleaning and resetting studios, moving heavy gear including metal poles and lighting equipment, setting up and operating teleprompter systems, painting floors and studio walls, performing maintenance work, running errands, and handling production equipment.

21.     These jobs were referred to under the catch-all term of "stage managing" but were not managerial for the purposes of wage classification under the FLSA or NYLL.

22.     Beyond in-house jobs that Plaintiff performed regularly at the discretion of Defendants, Plaintiff was also assigned various other jobs for the benefit of Defendants. By way of example, Defendants would send Plaintiff to perform projector installation and projection mapping for other businesses that hired Defendants for this purpose.

23.     For a period of time, once a week Defendants would send Plaintiff to the post office to hand deliver a check for to be mailed to one of Defendant Bravo Media's subsidiaries.

24.     At one point, Plaintiff was tasked with setting up a live stream for campaign Defendant Bravo Media was working on for one of its clients.

25.     At another point during his employment, Defendants assigned Plaintiff to organize the personal home videos of one of Defendant Bravo Media's clients and then arrange to have them digitized by an outside company for the client.

26.     In or about July 2022, Defendant Bravo Media was hired to do a gorilla marketing campaign for abortion rights. Plaintiff was given the job of driving around a van that projected designated materials onto buildings. Defendants assigned Plaintiff to drive to areas they chose in New York, Pennsylvania, and Washington, D.C. Defendants then flew Plaintiff to Colorado to do the same. Defendants paid for Plaintiff's travel and accommodations, and provided the routes,

4

materials, and equipment. Defendants also chose and hired the individual assigned to work with Plaintiff in Colorado.

27.    Essentially, Defendants assigned Plaintiff to do whatever job or task benefited them on any particular day.

28.    When Defendants initially hired Plaintiff, they misclassified him as an independent contractor and paid him as one despite exercising complete control over his work, including:

    a.  Setting all work schedules and assignments;

    b.  Controlling methods and procedures of work;

    c.  Providing all equipment and materials;

    d.  Setting all rates of pay; and,

    e.  Requiring adherence to company policies and procedures.

29.    In or about January 2023, Defendants switched to paying Plaintiff as an employee. Nothing changed with regard to Plaintiff's job leading up to or following Defendants' decision to change the manner in which they paid him.

30.    For the first approximately eight (8) months of employment, Defendants paid Plaintiff a flat rate of $175 for the first 10 hours of work most days, regardless of the total number of hours Plaintiff had worked that week.

31.    Again, without regard to the total number of hours Plaintiff worked in a week, Defendants sometimes paid Plaintiff an additional $25 per hour for each hour that he worked beyond ten (10) in a day.

32.    At times, Plaintiff was not compensated at any rate of pay for hours over ten (10) in a day or was not compensated for all hours over ten (10).

33.     Starting in January 2023, Defendants increased Plaintiff's flat rate to $200 per day but did not increase the rate of pay for hours after ten (10) in a day, when he was paid for those hours at all.

34.     Occasionally, Defendants assigned Plaintiff specific job duties for a day that per industry standard typically paid at a higher rate than stage managing. On those days, Defendants would pay Plaintiff a higher day rate for the first ten hours of work but nothing else about his pay changed for the day or week this occurred.

35.     Throughout his employment, Plaintiff regularly worked between forty (40) and forty-eight (48) hours per week, typically four (4) to five (5) days per week, with documented instances of working eight (8) to (9) consecutive days.

36.     On average, Plaintiff worked approximately forty-five (45) hours per week.

37.     Plaintiff's work schedule frequently changed with only one (1) or two (2) days notice, and he was required to be available based on Defendants' needs.

38.     As is customary in the industry, throughout Plaintiff's employment, Defendants provided a $25 per day meal stipend to Plaintiff and other employees. If Plaintiff worked over twelve hours in a day, Defendants provided an additional $25 stipend.

39.     Typically, employees utilized this stipend by ordering food through a shared account on a meal delivery app which was billed to the company credit card.

40.     Because he is a vegan, Plaintiff's meal choices are limited and restaurant food is generally more costly. Due to this fact, from the beginning of his employment Plaintiff would often aggregate the value of multiple stipends prior to actually placing a food order. At the beginning of his employment, Plaintiff had been told this practice was permissible and he had been doing it throughout his employment. Plaintiff was told this by Tracy Donovan, the wife of then owner Tim

Donovan and the individual who managed Defendant Bravo Media's money until in or about January 2024.

41.     On or about March 14, 2024, Defendant Kelley was talking to Plaintiff about a former employee named Allen who had been something of an all-around right hand man at Defendant Bravo Media. Defendant Kelley asked Plaintiff if he would be interested in taking on a similar role. Defendant Kelley specifically told Plaintiff that taking on this role would require him to work more hours.

42.     Plaintiff responded by telling Defendant Kelley that he would love to have the job but that his pay would need to change. He stated that he was being underpaid and that he was not being paid properly.

43.     Defendant Kelley offered Plaintiff an additional $50 per day.

44.     Plaintiff declined and told Defendant Kelley that it wasn't enough and specifically told him that in addition to being underpaid for the industry, the way he was being paid overtime, at a flat $25 rate and after ten (10) hours in a day, was not proper or legal.

45.     This was not the first time Plaintiff had made this observation. In the past he had commented to other stage managers that they were not being paid right. Another managerial employee, David Title, had overheard these comments once and responded with "don't go starting a union."

46.     However, this was the first time Plaintiff had said anything about the unlawful pay practices to Defendant Kelley.

47.     In response, Defendant Kelley grew very angry and started cursing at Plaintiff and stormed out.

48.     This conversation occurred on Thursday, March 14, 2024, at the end of the workday. Plaintiff was supposed to work the following Saturday and Monday but was removed from the calendar for both days sometime Thursday night or Friday.

49.     As soon as Plaintiff arrived to work that Tuesday, March 19, 2024, Defendant Kelley told him "this has nothing to do with the conversation we had on Thursday but I'm going to have to let you go."

50.     Defendant Kelley then falsely accused Plaintiff of misusing the company credit card in relation to the aforementioned practices related to meal stipends. Defendant Kelley also admitted during this conversation that he was unhappy about the conversation about pay that had occurred between the two the prior week.

51.     Despite his transparently false denial of same, Defendants clearly terminated Plaintiff's employment in retaliation for making protected complaints about Defendant's unlawful pay practices.

52.     Although Defendant Kelley told Plaintiff he was terminated effective immediately, in an attempt to defend himself, Plaintiff explained that he had been purchasing food that way throughout his employment and that Tracy Donovan had approved it.

53.     Defendant Kelley sent Plaintiff out of his office for a short time and then called him back in saying that Tracy Donovan had confirmed this practice was approved and rescinded his termination. Defendant Kelley also admitted that the termination had been related to Plaintiff's protected wage complaints.

54.     Approximately one (1) month later, clearly still looking for a plausible excuse to get rid of Plaintiff following his protected complaints, Defendants terminated Plaintiff for his

"general demeanor" and "attitude." Defendants had never taken issue with Plaintiff in this regard before, clearly evidenced by Defendant Kelley offering Plaintiff a promotion just one month prior.

55.     Throughout Plaintiff's employment, Defendants failed to maintain accurate records of hours worked and failed to provide proper wage statements as required by law.

56.     Defendants also consistently failed to pay Plaintiff in accordance with the law with regard to overtime compensation or to pay him at any rate of pay for all hours worked.

57.     Additionally, throughout his employment, Plaintiff was entitled to be compensated on a weekly basis pursuant to NYLL § 191 due to the fact that his job was almost exclusively manual labor.

58.     However, during the entirety of Plaintiff's employment, Defendants consistently and unlawfully compensated him on a biweekly basis.

59.     As a direct result of Defendants' unlawful actions, Plaintiff has suffered significant financial damages and emotional distress, including anxiety, depression, and sleep issues.

60.     Throughout the relevant period, Defendants knew or should have known that their failure to pay Plaintiff proper wages violated the FLSA and NYLL.

61.     Throughout the relevant period, Defendants knew or should have known that their misclassification of Plaintiff as an independent contractor violated the FLSA and NYLL.

62.     Throughout the relevant period, Defendants knew or should have known that their failure to maintain proper records violated the FLSA and NYLL.

63.     Throughout the relevant period, Defendants knew or should have known that their failure to provide proper wage notices and statements violated the NYLL.

64.     Defendants' violations of the FLSA and NYLL have been willful, deliberate, and intentional, and not the result of any good faith belief that their conduct was in compliance with the law.

## COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### 29 U.S.C. § 201 *ET SEQ.*
### <u>FAILURE TO PAY OVERTIME WAGES</u>

65.     Plaintiff alleges, re-alleges, and incorporates by reference all allegations set forth in each of the preceding paragraphs as though fully set forth herein.

66.     At all times relevant to this Complaint, each of the Defendants has been and continues to be an "employer" within the meaning of the FLSA (29 U.S.C. § 207(a)(2)).

67.     At all times relevant to this Complaint, Defendants "employed" Plaintiff by suffering or permitting him to work within the meaning of the FLSA (29 U.S.C. § 203(g)).

68.     The FLSA regulates the payment of wages by employers whose employees are "engaged in commerce or engaged in the production of goods for commerce, or are employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1).

69.     At all times relevant to this Complaint, Defendants had more than two (2) employees employed in an enterprise engaged in commerce.

70.     At all times relevant to this Complaint, Defendant was a qualifying employer within the meaning of the FLSA (29 U.S.C. § 203(s)). As such, Defendant was and is subject to the overtime pay requirements of the FLSA.

71.     At all times relevant to this action, Plaintiff was entitled to the rights, benefits, and protections granted by the FLSA, 29 U.S.C. §§ 207, *et seq*.

72.     Section 207(a)(1) of the FLSA states that an employee must be paid overtime, equal to at least one and one-half times the employee's regular rate of pay, for all hours worked in excess of forty (40) per week.

73.     By the above-alleged conduct, Defendants have violated the FLSA by failing to pay Plaintiff overtime compensation for all hours worked in excess of forty (40) per week as required by the FLSA.

74.     Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of employees from the overtime compensation requirements set forth in Section 207(a)(1) of the FLSA.

75.     However, none of the Section 13 exemptions apply to Plaintiff because he has not met the requirements for coverage under the exemptions.

76.     Defendants have acted willfully and have either known that their conduct violated the FLSA or have shown reckless disregard for the matter of whether their conduct violated the FLSA.

77.     Defendants have not acted in good faith with respect to the conduct alleged herein.

78.     As a result of Defendants' violations of the FLSA, Plaintiff has incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees, and costs of litigation pursuant to 29 U.S.C. § 216(b).

## COUNT II
## VIOLATION OF ARTICLES 6 AND 19 OF THE NEW YORK LABOR LAW
## FAILURE TO PAY OVERTIME WAGES

79.     Plaintiff alleges, re-alleges, and incorporates by reference all allegations set forth in each of the preceding paragraphs as though fully set forth herein.

80.     At all times relevant to this Complaint, Defendants were "employers" of Plaintiff within the meaning of the NYLL and the supporting Regulations pertaining thereto.

81.     At all times relevant to this Complaint, Plaintiff was an "employee" of Defendants within the meaning of the NYLL and the supporting Regulations pertaining thereto.

82.     At all times relevant to this Complaint, Defendants employed Plaintiff, suffering or permitting him to work within the meaning of the NYLL and the supporting Regulations pertaining thereto.

83.     At all times relevant to this Complaint, Plaintiff was employed by Defendants within the meaning of NYLL §§ 2 and 651.

84.     The overtime wage provisions of Article 19 of the NYLL and its supporting New York State Department of Labor Regulations apply to Defendants and protect Plaintiff.

85.     Under New York law, an employee must be paid overtime, equal to one and one-half times the employee's regular rate of pay for all hours worked in excess of forty (40) per workweek. 12 N.Y.C.R.R. §146-1.4.

86.     By the above-alleged conduct, Defendants failed to pay Plaintiff overtime compensation for all hours that he worked in excess of forty (40) hours each workweek for Defendants.

87.     By the above-alleged conduct, Defendants failed to pay Plaintiff overtime compensation as required by the NYLL and the Regulations pertaining thereto.

88.     Plaintiff is not exempt from the overtime provisions of the NYLL and the Regulations pertaining thereto because he has not met the requirements for any of the reduced number of exemptions available under New York law.

89.     At all times relevant to the Complaint, Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff.

90.     Defendants have acted willfully and have either known that their conduct violated the NYLL and the Regulations pertaining thereto or have shown a reckless disregard for the matter of whether their conduct violated the NYLL and the Regulations pertaining thereto. Defendants have not acted in good faith with respect to the conduct alleged herein.

91.     Through their knowing and intentional failure to pay Plaintiff overtime wages for all hours worked in excess of forty (40) hours each workweek, Defendants willfully violated Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

92.     As a result of Defendants' violations of the NYLL and the Regulations promulgated therein, Plaintiff has incurred harm and loss in an amount to be determined at trial, and is entitled to recover from Defendants his unpaid overtime wages, as provided for by the NYLL and supporting Regulations, in addition to liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## COUNT III
## VIOLATION OF ARTICLES 6 AND 19 OF THE NEW YORK LABOR LAW
## FAILURE TO PAY MINIMUM WAGES

93.     Plaintiff alleges, re-alleges, and incorporates by reference all allegations in all preceding paragraphs as though fully set forth herein.

94.     At all relevant times to this action, Plaintiff has been an employee of Defendants, and Defendants have been employers of Plaintiff within the meaning of §§ 2 and 651 of the NYLL and the supporting New York State Department of Labor Regulations.

95.     The wage provisions of Article 19 of the NYLL and its supporting Regulations apply to Defendants and protect Plaintiff.

96.     As set forth herein, Defendants regularly and routinely failed to pay Plaintiff at the applicable minimum hourly wage for all hours worked in violation of the New York Minimum Wage Act, Article 19 of the NYLL, and the supporting Regulations.

97.     Defendants willfully failed to pay Plaintiff at the applicable minimum hourly wage in violation of the New York Minimum Wage Act, Article 19 of the NYLL, specifically NYLL § 652, and the supporting Regulations.

98.     The NYLL requires that employees be paid a minimum wage. NYLL § 652.

99.     Because Defendants failed to pay Plaintiff at any rate of pay for some of the hours he worked during the relevant time period, Defendants failed to pay Plaintiff at the applicable minimum hourly wage rates during his employment for all hours worked in violation of the New York Minimum Wage Act and supporting Regulations.

100.    Defendants willfully failed to pay Plaintiff at the applicable minimum hourly wage in violation of the New York Minimum Wage Act, Article 19 of the NYLL, specifically NYLL § 652, and the supporting New York State Department of Labor Regulations pertaining thereto.

101.    As a result of Defendants' unlawful practices, Plaintiff has suffered a loss of wages.

102.    As a result of Defendants' violations of the NYLL and the supporting New York State Regulations promulgated therein, Plaintiff has incurred harm and loss in an amount to be determined at trial and is entitled to recover from Defendants his unpaid minimum wages, as provided for by the NYLL, in addition to liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**COUNT IV**
**VIOLATION OF SECTIONS 191 AND 198 OF THE NEW YORK LABOR LAW**
**NYLL- FAILURE TO PAY REGULAR WAGES**

103.    Plaintiff alleges, re-alleges and incorporates by reference all allegations from all preceding paragraphs as though fully set forth herein.

104.    During the relevant time period of his employment, from in or around April 2022 through April 2024, Defendants required Plaintiff to regularly perform work for which he was not paid.

105.    During this time, Defendants suffered and permitted Plaintiff to regularly work these hours without paying his regular rates of pay or any compensation at all.

106.    Defendants' failures to pay Plaintiff for all the hours he worked constituted outrageous conduct, made knowingly and willfully, or with a reckless indifference to Plaintiff's rights.

107.    As a result of Defendants' violation of the NYLL and the Regulations promulgated therein, Plaintiff has incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation.

**COUNT V**
**VIOLATION OF THE FLSA**
**29 U.S.C. § 201 *ET SEQ.***
**RETALIATION FOR PROTECTED COMPLAINTS**

108.    Plaintiff reasserts and realleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

109.    Defendants retaliated against Plaintiff in violation of his rights secured by the FLSA for making protected complaints alleging unlawful pay practices in violation of the FLSA.

110.    Plaintiff was terminated due to his protected actions.

111.    Plaintiff suffered severe emotional distress as a result of the termination.

112.    Plaintiff suffered significant economic loss as a result of the termination.

113.    Defendants engaged in retaliation with malice and with reckless indifference to the right of Plaintiff to be free from such illegal actions.

114.    Defendants retaliated in the face of the perceived risk that their actions violated federal law.

**COUNT VI**
**VIOLATION OF THE NEW YORK LABOR LAW**
**NYLL SECTION 215**
**RETALIATION FOR PROTECTED COMPLAINTS**

115.    Plaintiff reasserts and realleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

116.    Defendants retaliated against Plaintiff in violation of his rights secured by the NYLL for making protected complaints alleging unlawful pay practices in violation of the NYLL.

117.    Plaintiff was terminated due to his protected actions.

118.    Plaintiff suffered severe emotional distress as a result of the termination.

119.    Plaintiff suffered significant economic loss as a result of the termination.

120.    Defendants engaged in retaliation with malice and with reckless indifference to the right of Plaintiff to be free from such illegal actions.

121.    Defendants retaliated in the face of the perceived risk that their actions violated federal law.

## COUNT VII
## <u>MISCLASSIFICATION AS INDEPENDENT CONTRACTOR</u>

122.    Plaintiff reasserts and realleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

123.    From in or about April 2022 through in or about January 2023, Defendants willfully misclassified Plaintiff as an independent contractor rather than an employee.

124.    Defendants exercised significant control over Plaintiff's work, including:

   a.   Setting all work schedules and assignments;

   b.   Controlling methods and procedures of work;

   c.   Providing all equipment and materials;

   d.   Setting all rates of pay;

   e.   Prohibiting Plaintiff from hiring or working with others; and

   f.   Requiring adherence to company policies and procedures.

125.    As a result of this misclassification, Plaintiff suffered financial loss.

126.    Defendants' misclassification of Plaintiff was willful and not made in good faith.

127.    As a result of this misclassification, Plaintiff has incurred harm and loss in an amount to be determined at trial.

## COUNT VIII
## VIOLATION OF THE NEW YORK LABOR LAW
## NYLL SECTION 191
## <u>FREQUENCY OF PAY VIOLATION</u>

128.    Plaintiff reasserts and realleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

129.    NYLL Section 191(1)(a) requires that manual workers be paid on a weekly basis and not later than seven calendar days after the end of the week in which the wages are earned.

130.    Throughout his employment with Defendants, Plaintiff was a manual worker within the meaning of NYLL Section 191(1)(a), as he spent more than 25% of his working time performing physical labor.

131.    Defendants failed to pay Plaintiff on a weekly basis, instead paying him on a biweekly basis in violation of NYLL Section 191(1)(a).

132.    Defendants' failure to pay Plaintiff on a weekly basis was willful.

133.    Plaintiff is entitled to recover any damages due to him pursuant to NYLL Section 191.

## COUNT IX
## VIOLATION OF THE NEW YORK LABOR LAW
## NYLL SECTION 195(1)
## FAILURE TO PROVIDE WAGE NOTICES

134.    Plaintiff reasserts and realleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

135.    Defendants willfully failed to furnish Plaintiff with wage notices during the entirety of his employment, including the date of his hiring, as required by NYLL § 195(1), in English or in the language identified by Plaintiff as his primary language, which were to contain, among other things, Plaintiff's rate or rates of pay and basis thereof; the regular pay day designated by Defendants as employers in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; and Plaintiff's regular hourly rates of pay and overtime rates of pay.

136.     Through their knowing and intentional failure to provide Plaintiff with the wage notices required by the NYLL, Defendants have willfully violated NYLL §§ 190 *et seq*. and the supporting Regulations.

137.     Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover statutory penalties, together with costs and attorneys' fees as provided by NYLL § 198(1-b).

**COUNT X**
**VIOLATION OF THE NEW YORK LABOR LAW**
**NYLL SECTION 195(3)**
**FAILURE TO PROVIDE WAGE STATEMENTS**

138.     Plaintiff reasserts and realleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

139.     Defendants willfully failed to provide Plaintiff proper written wage statements with his wages each week as required by NYLL § 195(3), which were to include, among other things, the dates of work covered by each payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; deductions; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular hours worked and the number of overtime hours worked.

140.     Through their knowing and intentional failure to provide Plaintiff with accurate wage statements required by the NYLL, Defendants have willfully violated NYLL §§ 190 *et seq*. and the supporting Regulations.

141.     Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover statutory penalties, together with costs and attorneys' fees as provided by NYLL § 198(1-d).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, by and through his attorneys, demands judgment against Defendants, jointly and severally, and in favor of Plaintiff, for a sum that will properly, adequately, and completely compensate Plaintiff for the nature, extent, and duration of the damages, costs of this action, and as follows:

A.    Declare and find that Defendants committed one or more of the following acts:

1.    Violated provisions of the FLSA by failing to pay overtime compensation to Plaintiff;
2.    Willfully violated the overtime provisions of the FLSA;
3.    Violated the law by misclassifying Plaintiff as an independent contractor;
4.    Violated the FLSA's anti-retaliation provisions;
5.    Violated the provisions of the NYLL by failing to pay minimum wages, regular wages, and overtime compensation to Plaintiff;
6.    Violated NYLL Section 191 by failing to pay Plaintiff on a weekly basis as required for manual workers;
7.    Violated NYLL Section 195(1) by failing to provide Plaintiff with proper wage notices;
8.    Violated NYLL Section 195(3) by failing to provide Plaintiff with proper wage statements;
9.    Violated NYLL Section 215 by retaliating against Plaintiff; and
10.    Willfully violated the applicable provisions of the NYLL;

B.    Award compensatory damages, including all overtime compensation and other wages owed, in an amount according to proof;

C.    Award liquidated damages under the FLSA;

D.    Award liquidated damages under the NYLL;

E.    Award statutory damages for violations of NYLL Sections 195(1) and 195(3);

F.    Award back pay, front pay, lost benefits, and compensatory damages, including emotional distress damages, resulting from Defendants' retaliatory conduct;

G.    Award punitive damages for Defendants' willful and malicious retaliation;

20

H.    Award prejudgment and post-judgment interest;

I.    Award all costs and attorneys' fees incurred in prosecuting this action; and

J.    Award such other and further relief as this Court deems just and proper.

Dated: May 29, 2025
     Albany, New York

**HARDING MAZZOTTI, LLP**

By:     *Melanie Lazarus*

Melanie J. Lazarus, Esq. (Bar ID: 5384839)
*Attorneys for Plaintiff*
1 Wall Street
Albany, New York 12205
Tel.: (518) 556-3476
Fax: (518) 389-6823
Email: Melanie.Lazarus@1800law1010.com

To:    Bravo Media Productions Inc.
      145 W 28th St, 2nd Floor
      New York, NY 10001

      Ryan Kelley
      145 W 28th St, 2nd Floor
      New York, NY 10001